UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN GRAY,<br><br>      Plaintiff,<br><br> -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>      Defendants. | Civil Action No: 07 Civ. 9790<br>(SHS)(DCF) |

*[Additional captions appear on the next page]*


REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GRAY
PLAINTIFFS' MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF LEAD
PLAINTIFFS AND LEADERSHIP STRUCTURE, AND (3) ENTRY OF [PROPOSED]
PRETRIAL ORDER NO. 1, AND IN RESPONSE TO THE OPPOSITION OF
<u>PLAINTIFFS SHAUN ROSE AND MARK GEROULO</u>

               Marian P. Rosner (MR-0410)
               Robert C. Finkel (RF-2373)
               Andrew E. Lencyk (AL-4329)
               James Kelly-Kowlowitz (JK-9616)
               **WOLF POPPER LLP**
               845 Third Avenue
               New York, New York 10022


               Robert I. Harwood (RH-3286)
               Daniella Quitt (DQ-1963)
               Samuel K. Rosen (SR-3287)
               **HARWOOD FEFFER LLP**
               488 Madison Avenue
               New York, NY 10022

               *Counsel for the Gray Plaintiffs and*
               *Proposed Interim Co-Lead Counsel*
               *for the Class*

Doc. 159512

| | |
|---|---|
| SHAUN ROSE,<br><br>                        Plaintiff,<br><br>          -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                      Defendants. | Civil Action No: 07 Civ. 10294 (SHS)(DCF) |
| MEREDITH TRANBERG,<br><br>                        Plaintiff,<br><br>          -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                      Defendants. | Civil Action No: 07 Civ. 10341 (SHS)(DCF) |
| ANTON K. RAPPOLD,<br><br>                        Plaintiff,<br><br>          -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                      Defendants. | Civil Action No: 07 Civ. 10396 (SHS)(DCF) |
| SAMIER TADROS,<br><br>                        Plaintiff,<br><br>          -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                      Defendants. | Civil Action No: 07 Civ. 10442 (SHS)(DCF) |

Doc. 159512

| | |
|---|---|
| STEPHAN FIORINO,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>　　　　　　　Defendants. | Civil Action No: 07 Civ. 10458 (SHS)(DCF) |
| JAMES BOLLA,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>　　　　　　　Defendants. | Civil Action No: 07 Civ. 10461 (SHS)(DCF) |
| MARK GEROULO,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>　　　　　　　Defendants. | Civil Action No: 07 Civ. 10472 (SHS)(DCF) |
| ALAN STEVENS,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>　　　　　　　Defendants. | Civil Action No: 07 Civ. 11156 (SHS)(DCF) |

| | |
|---|---|
| STEVEN GOLDSTEIN,<br><br>               Plaintiff,<br><br>     -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>               Defendants. | Civil Action No: 07 Civ. 11158 (SHS)(DCF) |
| CHRIS SOUTHARD,<br><br>               Plaintiff,<br><br>     -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>               Defendants. | Civil Action No: 07 Civ. 11164 (SHS)(DCF) |
| WILLIAM WOODWARD, *ET AL.*,<br><br>               Plaintiff,<br><br>     -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>               Defendants. | Civil Action No: 07 Civ. 11207 (SHS)(DCF) |
| FRANCIA BRICK,<br><br>               Plaintiff,<br><br>     -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>               Defendants. | Civil Action No: 07 Civ. 11369 (SHS)(DCF) |

Doc. 159512

Plaintiffs Stephen Gray, Samier Tadros and James Bolla (collectively, the "Gray Plaintiffs"), respectfully submit this reply memorandum in further support of their motion for entry of [Proposed] Pretrial Order No.1 (a) consolidating the above-captioned actions arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§502(a)(2) and (3), and §§1132(a)(2) and (3); (b) appointing the Gray Plaintiffs as Interim Co-Lead Plaintiffs on behalf of a proposed class of participants and beneficiaries of the Citigroup 401(k) Plan and the Citibuilder 401(k) Plan for Puerto Rico (the "Class"); (c) appointing the firms of Wolf Popper LLP ("Wolf Popper") and Harwood Feffer LLP ("Harwood Feffer") as Interim Co-Lead Counsel, and in response to the opposition filed by Plaintiffs Shaun Rose and Mark Geroulo ("Rose Plaintiffs").[1]

## I. PRELIMINARY STATEMENT

Since the filing of the Gray Plaintiffs' opposition papers on January 4, 2007, in which Schiffrin, Barroway Topaz & Kessler, LLP's ("Schiffrin") conflicts were disclosed, Schiffrin has filed a notice of withdrawal as Plaintiff Rose's counsel of record.[2] Along with Schiffrin's

---

[1] The Gray Plaintiffs filed their original motion on November 26, 2007. The Rose Plaintiffs filed their initial motion and opposition to the Gray Plaintiffs' motion on December 13, 2007, together with a supporting brief ("Rose Initial Br."), and, following this Court's December 19, 2007 order ("Order"), filed a "superseding" motion and memorandum ("Rose Supers. Br."), dropping certain arguments with respect to the Gray Plaintiffs. On January 4, 2007, the Rose Plaintiffs filed an opposition to the Gray Plaintiffs' motion, rehashing almost all of the arguments they previously dropped from their initial motion, with an additional response to the competing motion filed by Plaintiff Stephen Goldstein ("Rose Opp. Br."). The Gray Plaintiffs have already addressed most of these arguments in their opposition to Rose Plaintiffs' motion, which was also filed with the Court on January 4, 2007 ("Gray Opp. Br.").

[2] Schiffrin also stated that Plaintiff Rose would be represented by Dealy & Silberstein LLP ("Dealy"), Schiffrin's designated local counsel, going forward. See Declaration of James Kelly-Kowlowitz in Further Support of the Gray Plaintiffs' Motion, filed herewith ("Kelly-Kowlowitz Reply Decl."), Ex. A. Subsequently, Gray Plaintiffs' counsel were informed, in an email from Schatz on the afternoon of January 10, the due date for these reply papers, that Dealy will also be withdrawing as liaison counsel.

Doc. 159512

withdrawal go many of the Rose Plaintiffs' arguments. The Rose Plaintiffs are left with one small firm, without the experience of Schiffrin, located outside of New York, and with limited resources. In contrast, the Gray Plaintiffs have demonstrated that, of the counsel competing for leadership, their counsel have done the most work of any moving firms in investigating and advancing the claims in this litigation; have the most skill and experience in class actions, other complex litigation and the type of claims asserted in this action; have more than the requisite resources to handle this litigation, having frequently handled larger and more complex class action litigations; have the support of the majority of the other plaintiffs who have filed actions to be consolidated herein; and represent the plaintiffs with the greatest financial interest in this litigation.

## II. ARGUMENT

### A. The Gray Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel

The Gray Plaintiffs have demonstrated that the appointment of their counsel is strongly favored because they meet all four factors of Fed. R. Civ. P. 23(g)(1)(A), and are the "best able to represent the interests of the [C]lass." Rule 23(g)(2).[3]

#### 1. The Gray Plaintiffs' Counsel Have Already Undertaken Substantial Work in Investigating and Pursuing the Claims of the Class, in Contrast to the Rose Plaintiffs' Counsel

The first factor under Rule 23(g)(1)(A), which focuses on the work counsel has done to advance the litigation, *see, e.g., Bynum v. Gov't of the Dist. of Columbia*, 384 F. Supp. 2d 342, 345 (D.D.C. 2005), strongly favors Gray Plaintiffs' counsel. Gray Plaintiffs' counsel have

---

[3]Rule 23 was amended effective December 1, 2007, following the Gray Plaintiffs' initial motion, such that some of the citations to Rule 23(g) have changed. Rule 23(g)(1)(A) was formerly Rule 23(g)(1)(C)(I). The citations for Rule 23(g) *infra* are to the new Rule 23(g), as amended.

Doc. 159512                                                 2

unquestionably done far more work than other counsel in identifying, investigating and prosecuting the claims in this action. *See* Gray Opp. 11-14, 19-23. In stark contrast to the original work done by the Gray Plaintiffs' counsel, the *Rose* Plaintiffs' complaints were modeled after Gray's complaint, as were many of the other subsequent cases filed against Citigroup in connection with its subprime mortgage securitization business, including the federal securities class actions and the derivative actions filed with the Court. Gray Opp. 13-14. Thus, aside from copying the work product of other counsel, the Rose Plaintiffs have not shown what they have "done in investigating and identifying the particular case" and should not be afforded any credit under this factor.[4]

### 2. The Gray Plaintiffs' Counsel Have Substantial Experience in Class Actions and Other Complex Litigation, and the Claims Asserted in This Case, Have the Requisite Resources to Prosecute This Action, and Have Knowledge of the Law Applicable in This Case

The second and third factors under Rule 23(g)(1)(A), counsel's experience in handling class actions, other complex litigation and claims of the type asserted in the action, and counsel's knowledge of the applicable law, also favor the appointment of Gray Plaintiffs' counsel. The Gray Plaintiffs have demonstrated that their counsel have a long history and substantial experience in litigating complex large scale class actions involving ERISA claims, financial fraud, and breaches of fiduciary duty. Gray Opp. 14-19. In contrast, the experience represented

---

[4] *See* Advisory Committee Notes to Rule 23(g), 2003 Amendments (noting "no single factor should be dispositive in selecting class counsel in cases in which there are multiple applicants. The fact that a given attorney filed the instant action, for example, might not weigh heavily in the decision if that lawyer had not done significant work identifying or investigating claims"); *see also Dollens v. Zionts*, 2001 U.S. Dist. LEXIS 19966, at *21 (N.D. Ill. Dec. 4, 2001) ("The court is not inclined to appoint Rothchild as lead plaintiff, even though he has the largest financial interest, where he has simply adopted the complaint of Dollens and has not otherwise demonstrated his ability to prosecute the case any more vigorously than other plaintiffs.")

by the Rose Plaintiffs' counsel has been significantly reduced as a result of Schiffrin's withdrawal from this litigation. Although Schatz Nobel Izard, P.C. ("Schatz") boasts of its complex litigation experience, its error in partnering as proposed Class co-lead counsel with the severely conflicted Schiffrin firm casts doubt as to Schatz's judgment and the quality of its experience. *See, e.g., Krim v. Pcorder.com, Inc.*, 210 F.R.D. 581, 589-591 (W.D. Tex. 2002)(denying class certification in part because class counsel was inadequate as a result of representing different classes of plaintiffs in separate lawsuits against the same defendant). This is striking because this is not the first time Schatz has faced this exact situation with the Schiffrin firm. In *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 555 (S.D. Ohio 2005), Schiffrin asked Schatz to prosecute the *Cardinal Health* litigation as co-lead counsel. Schatz declined due to Schiffrin's conflict stemming from a different litigation it was prosecuting against an affiliate of Cardinal Health. *Id*. In that case, Schatz was fully aware of the inherent conflicts that result from representing different classes of plaintiffs with conflicting claims against the same defendant, or pool of assets. Why Schatz was not equally sensitive to the conflict here is inexplicable.

Further, the Rose Plaintiffs do not and cannot match the resources of Gray Plaintiffs' counsel under the fourth factor of Rule 23(g)(1)(A). Together, Wolf Popper and Harwood Feffer have more than thirty attorneys, and a support staff of over thirty additional individuals, which includes CPAs, a full time private investigator, and a full time financial analyst, who have already dedicated substantial resources to this action. In contrast, Schatz has only nine attorneys (per its website).[5]

---

[5]As noted above, n.1., it appears that Dealy has now withdrawn as liaison counsel. In a last-ditch maneuver to obtain a lead counsel position for itself, Schatz has now apparently replaced its proposed

3.  **Putting a Hartford, CT Based Firm in Charge Of This Litigation Against Citigroup Does Not Achieve Efficiencies for the Class**

Schatz is located a three-hour drive away in Hartford, CT. The cost of Schatz's time and travel in this litigation will be significant. Each Citigroup employee and third-party witness is expected to be in New York, as are their counsels' offices (such as have appeared to date). The cost and inefficiencies of Schatz traveling to the numerous depositions, hearings and meetings expected to take place in New York in this vast litigation is an unnecessary cost to impose on the Class.[6] In contrast, Wolf Popper and Harwood Feffer are both located in New York City, with easy access to Defendants' headquarters, as well as the Court.

4.  **The Fact That Gray Plaintiffs' Counsel Have the Support of a Majority of Other Plaintiffs and Their Counsel, is Telling of Peer Counsel's Evaluation of the Expertise and Effectiveness of Counsel**

The Rose Plaintiffs claim that two of the plaintiffs in the related ERISA actions intend to endorse their previously proposed leadership structure (*i.e.*, before proposed lead counsel Schiffrin withdrew from this litigation). However, out of the thirteen plaintiffs who filed cases, eight of them, and their counsel, support the leadership structure proposed by the Gray Plaintiffs. *See* Kelly-Kowlowitz Reply Decl., ¶ 4.[7] The view of the majority of the other plaintiffs in the

---

liaison counsel. However, it is axiomatic that it is the lead counsel's experience and resources that count in selecting lead counsel, not liaison counsel's. Accordingly, Schatz's last-minute scrambling is of no moment.

[6]*See In re Tyco Int'l, Ltd. Sec. Litig.*, MDL No. 02-1335-B (D.N.H. Dec. 18, 2002) (Rose Plaintiffs' counsel's own authority, Ex. D. to Izard Decl.) (factor which helped "tip the balance" in favor of appointment of certain counsel in charge of the ERISA cases was "the advantage of proximity to both this court and the litigation's likely center of gravity in New York.").

[7]The Rose Plaintiffs argue that at least four cases were filed by Wolf Popper and/or Harwood. In actuality, Wolf Popper filed a complaint on behalf of plaintiff Gray, and then filed another complaint on behalf of another large stakeholder in the Citigroup 401(k) plan, James Bolla. Wolf Popper is liaison counsel on behalf of another plaintiff, Stephan Fiorino. His counsel is Ann D. White Law Offices, PC. Even if one discounts plaintiff Bolla from the equation because he is represented by Wolf Popper, a

case, and their experienced, qualified peer counsel, is confirmation that Gray Plaintiffs' counsel are "best able to represent the interests of the [C]lass." Rule 23(g)(2). *See also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 05-1720, 2006 WL 2038650, at *2 (E.D.N.Y. Feb. 24, 2006) (cited Rose Opp. Br. 14) (support from "numerous non-lead counsel representing plaintiffs" is an important factor in appointing interim counsel under 23(g)).[8]

### B. The Gray Plaintiffs Have A Far Greater Interest In The Outcome Of This Litigation Based On The Submissions Of The Competing Movants, And Should Be Appointed Lead Plaintiffs

The Gray Plaintiffs have collectively suffered losses of over $275,000 of their retirement savings. *See* Declaration of James Kelly-Kowlowitz, dated January 4, 2008, previously filed with the Court, ¶ 4. The Rose Plaintiffs argue that individual loss amounts have no relevance in an ERISA case. This argument is not surprising considering that the Rose Plaintiffs failed in their moving papers to claim any type of financial interest in this litigation, such as what their losses were, or what their holdings in Citigroup common stock were through the Plan. Plaintiff Geroulo does not even allege that he was a participant in the Plan during the relevant time period, or whether he owned any shares of Citigroup common stock through his investments in the Plan. *See, e.g.*, Geroulo Complaint, ¶ 9.

The Rose Plaintiffs argue that individual participant damages are irrelevant because only

---

majority of the plaintiffs (7 out of 13), and their counsel support the Gray Plaintiffs' leadership structure.

[8] At least five plaintiffs have filed responses with the Court in support of the Gray Plaintiffs' motion. *See Rappold v. Citigroup Inc.*, 07-CV-10396(SHS)(DCF) (Docket #7); *Tranberg v. Citigroup, Inc.,* 07-CV-10341(SHS)(DCF) (Docket #11); *Fiorino v. Citigroup Inc.*, 07-CV-10458(SHS)(DCF) (Docket #28); *Steven v. Citigroup, Inc.*, 07-CV-11156(SHS)(DCF) (Docket #18); *Southard v. Citigroup, Inc.*, 07 CV-9790 (SHS)(DCF) (Docket #17).

losses suffered by the Plan are recoverable. The Rose Plaintiffs miss the point. All thirteen Plaintiffs (including the Gray Plaintiffs and the Rose Plaintiffs) have specifically alleged that they are seeking claims on behalf of the Plan and the Class. However, it is common sense that plaintiffs with much larger stakes invested in the Plan will be more highly motivated lead plaintiffs and class representatives than those with little or *de minimis* interests.

Although there are few decisions citing factors for appointment of interim lead plaintiffs in ERISA cases, claims on behalf of a plan under ERISA are most akin to a derivative case brought on behalf of a corporation, where many federal courts have found the size of the applicants financial interest as a relevant factor in determining the appointment of lead plaintiffs. *See, e.g., In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) (holding that there is a presumption in favor of appointing "[plaintiffs] with very large stock holdings" in a derivative action); *Dollens v. Zionts*, 2001 U.S. Dist. LEXIS 19966, at *17-18 (taking into account the holdings of the various plaintiffs in appointing lead plaintiff in a derivative action); *cf. Millman v. Brinkley*, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1, 2004) (on motion to appoint lead plaintiffs and counsel in derivative case, court held that plaintiffs who "have continuously held" their stock during relevant time period "weighs in favor of Plaintiffs ... capacity to better represent the interests of the shareholders" of the company). Like federal courts, state courts also emphasize the size of an applicant's financial interest in the litigation in selecting derivative lead plaintiffs. *See Hirt v. U.S. Timberlands Serv. Co., LLC*, 2002 Del. Ch. LEXIS 89, at *5 (Del. Ch. July 3, 2002) ("the relative economic stakes of the competing litigants in the outcome of the lawsuit" are "to be accorded 'great weight'") (*quoting TCW Tech. Ltd.*

*P'ship v. Intermedia Commc'ns, Inc.*, 2000 WL 1654504, at *4 (Del. Ch. Oct. 17, 2000)).[9] In considering the size of the loss of the plaintiffs, Courts will also guard against counsel-driven litigation.

### III. CONCLUSION

For the foregoing reasons, the Gray Plaintiffs' motion for (i) consolidation of the above-captioned actions, (ii) appointment of the Gray Plaintiffs as Interim Co-Lead Plaintiffs on behalf of the proposed Class, and (iii) appointment of the firms of Wolf Popper and Harwood Feffer as Interim Co-Lead Counsel, should be granted, and the competing motion of the Rose Plaintiffs for their appointment of interim lead plaintiffs, co-lead counsel and liaison counsel, should be denied.

---

[9] The Rose Plaintiffs' citation to *In re Comverse Technology, Inc. Deriv. Litig.*, No. 06-CV-1849 (NGG)(RER), 2006 WL 3761986, at *3, n. 6 (E.D.N.Y. Sept. 22, 2006), for the proposition that a plaintiff's financial interest is not considered in derivative cases, is misleading. First, the magistrate judge there stated that the issue of the size of the plaintiffs' financial interest did not apply in the selection of lead counsel, but did not address whether it applied in the selection of the lead plaintiff. Second, the movants in that case objected to the magistrate judge's ruling and moved the District Court to vacate the opinion. The District Court, while finding no basis to set aside the magistrate's order, held that "the largest financial interest" is "relevant" when selecting interim lead counsel, albeit "when all things are otherwise equal." *In re Comverse Technology, Inc. Deriv. Litig.*, 2006 WL 3511375, at *4 (E.D.N.Y. Dec. 5, 2006). The Rose Plaintiffs' citation to the magistrate judge's ruling in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2006 WL 2038650, at *2, is also misplaced. In that decision, the court likewise did not address the appointment of interim lead plaintiffs at all, only the appointment of interim lead counsel under Rule 23(g), and noted that, unlike this case, there was disagreement as to the relative stakes in the litigation.

Dated: New York, New York
January 10, 2008

Respectfully submitted,

By: _____
Marian P. Rosner (MR-0410)
Robert C. Finkel (RF-2373)
Andrew E. Lencyk (AL-4329)
James Kelly-Kowlowitz (JK-9616)
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

By: _____
Robert I. Harwood (RH-3286)
Daniella Quitt (DQ-1963)
Samuel K. Rosen (SR-3287)
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY 10022
Telephone: (212)-935-7400
Facsimile: (212)753-3630

*Counsel for the Gray Plaintiffs and Proposed Interim Co-Lead Counsel for the Class*